IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SIMIO, LLC, <br><br> Plaintiff, <br> v. <br><br> FLEXSIM SOFTWARE PRODUCTS, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:18-cv-00853 <br><br> U.S. District Judge Dee Benson |

Before the court is Defendant's Motion to Dismiss for Failure to State a Claim. (Dkt. No. 25.) The motion has been fully briefed by the parties, and the court has reviewed the arguments set forth in those filings. On May 29, 2019, the court heard oral argument on Defendant's motion. At the conclusion of the hearing, the court opted to take the matter under advisement with a written order to follow.

## BACKGROUND

Plaintiff Simio LLC, a Delaware company that creates and sells simulation software, filed a complaint on October 30, 2018 alleging patent infringement of U.S. Patent No. 8,156,468 B22 ("the '468 patent") by Defendant FlexSim Software Products, Inc., a Utah corporation. (Dkt. No. 2.) Plaintiff claims that by making, offering to sell, and/or selling its FlexSim 2016 software, Defendant has infringed at least Claims 1, 2, 3, 6, 8, and 9 of Plaintiff's patent, which was issued on April 10, 2012. (*Id.* at 3, 6.)

According to Plaintiff, Claims 2-13 of the '468 patent depend directly or indirectly upon Claim 1. (*Id.* at 3.) Independent Claim 1 of the '468 patent states:

A computer-based system for developing simulation models on a physical computing device, the system comprising:

one or more graphical processes;

one or more base objects created from the one or more graphical processes, wherein a new object is created from a base object of the one or more base objects by a user by assigning the one or more graphical processes to the base object of the one or more base objects;

wherein the new object is implemented in a 3-tier structure comprising:
an object definition, wherein the object definition includes a behavior, one or more object instances related to the object definition, and one or more object realizations related to the one or more object instances;

wherein the behavior of the object definition is shared by the one or more object instances and the one or more object realizations; and

an executable process to add a new behavior directly to an object instance of the one or more object instances without changing the object definition and the added new behavior is executed only for that one instance of the object.

(*Id.* at 3-4.)

Defendant launched its FlexSim 2016 software tool, "Process Flow," in March 2016. Defendant described this tool as "an innovative and revolutionary way to define logic in a 3D simulation model" that "replaces nearly all computer code with a flowchart," thereby simplifying the simulation process and reducing a typical simulation project's length by hours. (Dkt. No. 2-2.) Plaintiff claims that because Defendant's software is a computer-based system for developing simulation models whereby, inter alia: (i) new objects are created from base objects by assigning one or more graphical processes to the base object(s); (ii) new objects are created without the need for methods or computer programming; and (iii) object instances are modified using process logic without modifying the object definition and without computer programming, Defendant's software includes all elements of Claim 1. Thus, Plaintiff argues that it directly infringes on the '468 patent in violation of 35 U.S.C. § 271(a). (Dkt. No. 2 at 6-7.) Plaintiff also argues that its "asserted claims are patent-eligible because they present software improvements

to computer-implemented simulation, resulting in improvements in the computers' capabilities." (Dkt. No. 33 at 18.) Defendant responds that Plaintiff's asserted claims are not patent-eligible because they do not qualify for protection under any of the statutory classes enumerated in 35 U.S.C. § 101, and because the asserted patent claims recite an abstract idea. (Dkt. No. 25.)

**DISCUSSION**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To state a plausible claim, a plaintiff must allege facts that would allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), the court accepts all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards Training*, 265 F.3d 1144, 1149 (10th Cir. 2001).

I. **Patent Eligibility Under Section 101**

The Federal Circuit has recognized that "in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 [of the Patent Act] on a Rule 12(b)(6) motion" without claim construction. *See Genetic Techs., Ltd. v. Merial LLC*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016). However, in patent infringement actions "every reasonable doubt should be resolved in favor of the validity of the patent," 69 C.J.S. PATENTS § 670, and "any attack on an issued patent based on . . . eligibility of the subject matter must be proven by clear and convincing evidence." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1342 (Fed. Cir. 2013).

Section 101 affords patent protection exclusively to four statutory categories of inventions: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101; *see also Ultramercial, Inc. v. Hulu,*

*LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014) ("A § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent-eligible subject matter."). During the hearing before the court, Plaintiff conceded that the "process," "manufacture," and "composition of matter" categories are inapplicable to its asserted patent, contending instead that its asserted claims are patent-eligible under the "machine" category. Accordingly, the court now considers whether Plaintiff's asserted claims qualify for patent protection as a machine under section 101.

"For all categories except process claims, the eligible subject matter must exist in some physical or tangible form." *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1348 (Fed. Cir. 2014) (affirming summary judgment that claims directed to a "device profile for describing properties of a device in a digital image reproduction system" were patent-ineligible because they were directed to information in its non-tangible form and did not fall within any of the four statutory categories). "To qualify as a machine under section 101, the claimed invention must be a concrete thing, consisting of parts, or of certain devices and combination of devices." *Id.* at 1348-49 (Fed. Cir. 2014). "Data in its ethereal, nonphysical form is simply information that does not fall under any of the categories of eligible subject matter under section 101." *Id.* at 1350.

Moreover, "simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim[.]" *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008); *see also In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008), *aff'd but criticized sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010) ("[M]ere field-of-use limitations are generally insufficient to render an otherwise ineligible . . . claim patent-eligible."); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d

1339, 1345 (Fed. Cir. 2003) ("An intended use or purpose usually will not limit the scope of the claim because such statements usually [just] define a context in which the invention operates.").

Although the preamble of Claim 1 describes a "computer-based system for developing simulation models on a physical computing device," the actual system claimed in the '468 patent does not qualify as a "machine" under the plain and ordinary meaning of section 101 of the Patent Act. Instead of claiming a "concrete thing, consisting of parts, or of certain devices," *see Digitech Image Techs.*, 758 F.3d at 1348-49, the court agrees with Defendant that Plaintiff's claimed system is comprised "entirely of transitory, intangible software logic modules called 'processes' and 'objects.'" (Dkt. No. 25 at 20.) In a nutshell, Plaintiff's invention at its core can be characterized as "pure data" and software processes without "any tangible medium, components or physical devices." (*Id.*) The "physical computing device" described in the preamble does not limit the scope of the claimed system, but merely identifies an intended use.

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) are not to the contrary. While the claims at issue in *Enfish* were not principally "defined by reference to 'physical' components" but instead to a software invention, they were nevertheless directed to a system that at a minimum expressly included computer hardware, i.e., "computer memory" or "memory", in the body of those claims. *See Enfish*, 822 F.3d at 1336, 1339.[1] And the patent in *McRO* claimed a "method for automatically animating lip synchronization[,]" which was a "process" claim that,

---

[1] Furthermore, in contrast with the self-referential table in *Enfish* which the Federal Circuit found to be "a specific improvement to the way computers operate," *Enfish*, 822 F.3d at 1336, Plaintiff's system does not improve a computer's efficiency or function, but is only comprised of graphical processes that create and modify data objects in simulation software. Merely reciting a software system's function is "not a 'specific improvement to the way computers operate.'" *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (citing *Enfish*, 822 F.3d at 1336).

unlike a machine claim, is not required to exist in a tangible form. *McRO*, 837 F.3d at 1307-08; *Digitech Image Techs.*, 758 F.3d at 1348.

Plaintiff fails to show how Claim 1 (including its preamble) could plausibly be construed to qualify the claimed system as a machine under section 101; instead, the preamble merely designates a generic computer as a tool or medium for the claimed system to operate on. It has thus failed to identify the necessary tangible or structural claim limitations for eligibility as a machine. Because Plaintiff has not alleged facts that would qualify its asserted claims for protection under any of the four statutory categories enumerated in section 101, Defendant has met its burden of demonstrating that Plaintiff's asserted claims are not patent-eligible. The court thus finds it proper to dismiss this case under section 101 alone.

## II. Patent Eligibility Under *Alice*

Even if the claimed system could be properly classified under one of the four statutory categories, the court holds that it is still a patent-ineligible "abstract idea" under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Under *Alice* step one, the court must first decide if the claims at issue are directed to a patent-ineligible abstract idea. *Id.* at 217-18. Then under *Alice* step two, the court searches for an "inventive concept" by considering the elements of each claim "both individually and as an ordered combination" to determine whether the additional elements nevertheless "transform the nature of the claim" into a patent-eligible application. *Id.*

When claims are drawn toward a "fundamental . . . practice long prevalent" in a specific industry, they are directed to an abstract idea. *See id.* at 219.[2] Plaintiff's '468 patent claims are

---

[2] The Federal Circuit has also held that "a process that starts with data, applies an algorithm, and ends with a new form of data is directed to an abstract idea." *Burnett v. Panasonic Corp.*, 741 Fed. Appx. 777, 781 (Fed. Cir. 2018). Plaintiff's final claim limitation reciting "an executable process to add new behavior to an object instance" (the crux of Plaintiff's argument for eligibility) is thus directed to an abstract idea and ineligible on these grounds alone.

6

fundamentally directed to the decades-old computer programming practice of substituting text-based coding with graphical processing (which the '468 patent states has been a widespread tool since the 1980s), as well as to the technique of replacing process-oriented programming with object-oriented programming (which the '468 patent explains has existed since the early 1960s). (*See* Dkt. No. 2-1.)  While the asserted claims as a whole could perhaps be described as novel, as they creatively apply these techniques to enable users without programming expertise to create and modify data objects using flowcharts within a simulation model, "[e]ligibility and novelty are separate inquiries."  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378, 202 L. Ed. 2d 288 (2018); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] new abstract idea is still an abstract idea. The search for a 101 inventive concept is thus distinct from demonstrating 102 novelty."); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (finding that "[n]o matter how groundbreaking the advance," an abstract idea itself cannot supply the inventive concept).  Because Plaintiff's asserted claims are drawn to conventional programming practices, they are directed to an abstract idea and thus ineligible for protection.

The court is also persuaded that because the language of Plaintiff's asserted claims appears to apply to the entire simulation software industry, the claims are ineligibly abstract. The asserted claim limitations are "so broadly worded" that they could effectively grant a monopoly to Plaintiff over most, if not all, simulation models that implement graphical processes to create or modify objects.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (finding software claims invalid where the recited limitation was "so broadly worded that it encompasses literally any method for detecting fraud" based on the gathered transaction data).

Regarding *Alice* step two, the Federal Circuit has "repeatedly recognized the absence of a genuine dispute as to eligibility for the many claims that have been defended as involving an inventive concept based merely on the idea of using existing computers . . . to carry out conventional processes, with no alteration of computer functionality." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1359 (Fed. Cir. 2018). While Plaintiff asserts that its claimed system consists of "software improvements to computer-implemented simulation, resulting in improvements in the computers' capabilities," (Dkt. No. 33 at 18), Plaintiff's asserted claims "do not improve the functioning of [a] computer, make it operate more efficiently, or solve any technological problem." *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019). Instead, Plaintiff's claims "simply instruct the practitioner to implement the abstract idea . . . on a generic computer[,]" *Alice*, 573 U.S. at 225, and merely describe a unique application of longstanding, generic programming practices in purely functional terms. Considering the elements of Plaintiff's claims both individually and as an ordered combination, Defendant has met its burden of showing no inventive concept or alteration of computer functionality sufficient to transform the system into a patent-eligible application.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 25) is hereby GRANTED. This action is therefore DISMISSED with prejudice.

Signed June 20, 2019.

                BY THE COURT

                _____
                District Judge Dee Benson